AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
JUN 07 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One Motorola Moto Cellular Telephone, seized from<br>David Alec WHITE on May 23, 2019, held in his<br>personal property by GEO Group Western Region | ) ) ) ) ) ) Case No.  **19MJ2380** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Southern___ District of ___California___ *(identify the person or describe property to be searched and give its location):* **See Attachment A**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*  **Seized from GEO Group Western Region Detention Facility - See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___26___ U.S.C. § ___5861, etc___ , and the application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Lennea Gordon, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/6/19

*Judge's signature*

City and state: San Diego, California          Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Lennea Gordon, being duly sworn, depose and state:

## INTRODUCTION

1. I make this affidavit in support of an application for permission to seize and a search warrant in furtherance of a firearms investigation conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agents for the following electronic device and accounts:
   a. One Motorola Moto Cellular Telephone, seized from David Alec WHITE (The **Target Subject** ) on May 23, 2019, and currently held in his personal property at GEO Group Western Region Detention Facility (the **Target Telephone**) as described in Attachment A (incorporated herein);

2. The **Target Telephone** is currently being held as part of the **Target Subject's** property at the GEO Group Western Region Detention Facility, located at 220 W. C Street, San Diego, California 92101. **Target Subject** had the **Target Telephone** with him at the time of his arrest on May 23, 2019.

3. Based on the information below, there is probable cause to believe that a search of the **Target Telephone** contains fruits, instrumentalities, and evidence of the Possession of an Unregistered Firearm under the National Firearms Act ("NFA"), Title 26 U.S.C. § 5861, and Title 18, U.S.C., § 922(a)(1)(A); manufacturing/dealing in firearms without a license (the **Subject Offenses**), between January 30, 2019, and May 23, 2019, as described in Attachment B (incorporated herein).

4. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B will be found in the items to be searched as described in Attachment A. These items may be or lead to evidence of the violation described above.

## TRAINING AND EXPERIENCE

5. I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since July 2018, and am assigned to the San Diego IV Field Office. Prior to joining ATF, I was a Special Agent with the U.S. Department of State's Diplomatic Security Service (DSS) for five years, working in Boston, Massachusetts, and Kuwait City, Kuwait. I am a graduate of the Federal Law Enforcement Training Center's (FLETC) Criminal Investigator Training Program (CITP), the DSS Basic Special Agent Course (BSAC), and the ATF National Academy's Special Agent Basic Training course (SABT). As an ATF Special Agent, I have received formal and informal training in federal firearms and drug laws. Throughout the course of my law enforcement career, I have participated in the application for, and execution of, numerous search warrants. Pursuant to 18 U.S.C. § 3051, I am empowered to enforce the criminal laws of the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for illegal firearms possessors and manufacturers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving illegal firearms possession generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, and phone numbers of co-conspirators. Further, I am aware that illegal firearms possessors and manufacturers illegally obtain firearms and ammunition from others, and do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities.

7. I also know that illegal firearms possessors and manufacturers sometimes maintain lists of clients that have outstanding debts, often referred to as "pay and owe" sheets. These debt lists are sometimes maintained on electronic files and stored on electronic storage devices.

8. In preparing this affidavit, I have conferred with other law enforcement personnel who are experienced in the area of firearms investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts or have had them related to me by persons mentioned in this affidavit.

9. Based upon my training and experience as an investigator, and consultations with law enforcement officers experienced in firearms investigations, and all the facts and opinions set forth in this affidavit, I submit the following:
   a. Illegal firearms possessors and manufacturers often use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, social networking sites, and voice messages.
   b. Illegal firearms possessors and manufacturers will use cellular telephones to set up the purchase and/or sale of firearms with suppliers and customers;
   c. Illegal firearms possessors and manufacturers often use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units.
   d. Illegal firearms possessors and manufacturers often use cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

10. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other investigators and agents

3

experienced in firearms investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate and all dates refer to the current calendar year and all times refer to Pacific Standard Time (PST) unless specified otherwise. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause.

## TECHNICAL BACKGROUND

### Definition of "Firearm"

11. Based on my background, training, and experience, I know that Title 18, United States Code, Section 921(a)(3)(A) defines a "firearm" as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." This definition includes "the frame or receiver of any such weapon," (see 18 U.S.C. § 921(a)(3)(B)), and "any combination of parts either designed or intended" from which a firearm can be "readily assembled." 18 U.S.C. § 921(a)(4)(C). According to 18 U.S.C. § 921(a)(3)(B), a "receiver" includes a "lower receiver."

12. Generally, most parts for a firearm (e.g. stocks, barrels, magazines) are not subject to domestic firearms licensing regulation by ATF. Accordingly, parts that are not subject to domestic firearms licensing regulation by ATF are often made by individuals and small businesses. These gun parts can be bought and sold without reporting the sales and without requiring a background check as is required by federal law for most firearm purchases.

13. According to Title 18 U.S.C. § 921(a)(3)(A) and (a)(3)(B), a lower receiver is considered a "firearm." The lower receiver by itself is regulated and controlled by ATF in the same way as a fully-assembled firearm. The manufacture, sale, transfer, and disposition

of lower receivers are regulated by ATF. Pictured below is a lower receiver for an AR-15-style rifle or pistol[1]:

**Firearm Milling and Drilling**



14. Based on my training and experience and discussions with other ATF employees, I know that non-fully-milled lower receivers are referred to by the commercial firearms industry as "blank", "an 80%," "an 80% blank," "an 80% lower," "casting" or "an AR-15 80%." These terms developed based on the perception that a non-fully-milled lower receiver, made of aluminum, metal, or polymer was 80% of a firearm, and therefore unregulated by ATF. The term "80%," and variations of it, are not used by ATF and are not officially recognized by ATF. In this affidavit, the un-milled lower receivers described above will be referred to hereafter as "unfinished lower receivers." Depicted below are two pictures of unfinished lower receivers.[2]

---

[1] Photo 1 - AR-15 lower receiver (photo not specific to this case).
[2] Photo 2 - AR-15 unfinished lower receivers (photos unrelated to this case).

5

15. Unfinished lower receivers are milled into firearms through the use of specialized tools, typically a Computer Numeric Control ("CNC") machine, drill press or a hand drill, a Dremel tool (a versatile, handheld rotary bit tool that can be used to cut, grind, drill, sand, and mill various materials), and other various types of milling equipment.

16. Using a CNC machine, drill press or a hand drill, the equipment operator drills, cuts, or mills cavities in specific locations on the AR-15 variant lower receiver. For example, in the following picture3, compare the unfinished lower receiver ("AR-15 variant receiver") depicted on the left with the AR lower receiver depicted on the right:



17. The milling/drilling process transforms the unfinished lower receiver into a finished AR lower receiver, or more generally, a Self-Manufactured Unserialized Firearm, by creating the precise shape and space necessary for the lower receiver to accept the parts that will allow the firing of a projectile. These shapes or cavities must be created to the exact specifications, as determined by the ATF, for the lower receiver to be classified as a firearm. If these cavities are not formed to the exact specifications required, the lower receiver is not considered a firearm and will not function and may break. When the process is done correctly, it also creates the holes necessary to attach the upper receiver and barrel

---

[3] Photo 3 - (clockwise from top left) AR-15 variant lower receiver, AR-15 lower receiver, AR-15 lower receiver (top view) (photos unrelated to this case).

to the lower receiver. The hammer, bolt or breechlock, and firing mechanism are the internal mechanical parts that combine with a trigger, firing pin, and other parts to form a functioning rifle.

18. The same process of milling and cutting is also used to make Glock style pistols and Springfield 1911-style pistols. Numerous companies have made "Do-It-Yourself" kits, an example of which is pictured below4, containing the tools, jigs and 80% lower receiver parts to finish the lower receiver and make a completed firearm.



19. The components for these Self-Manufactured Unserialized Firearms are easily purchased by those prohibited from owning firearms because no background check is required. And, and unlike a fully-assembled rifle or pistol manufactured by a licensed manufacturer, Self-Manufactured Unserialized Firearms are completely untraceable because they have no serial number and no manufacturer identification.

**National Firearms Act (NFA)**

20. The NFA requires the registration in the National Firearms Registration and Transfer Record ("NFRTR") of all firearms that meet the NFA definition of a firearm. One

---

4 Photo 4 – Glock style kit with jig (red) and parts for firearm assembly (photo not specific to this case).

7

such category of NFA firearms that requires registration is "a rifle having a barrel or barrels of less than 16 inches in length," also known as a Short Barrel Rifle (SBR). In addition to requiring registration in the NFRTR, SBRs and other NFA firearms also must bear a serial number to be compliant with the NFA.

## PROBABLE CAUSE

21. The facts set forth herein are those that I believe are relevant to the limited purposes of this affidavit, namely, to establish probable cause for the requested warrant. The affidavit does not, therefore, include each and every fact that I or other law enforcement personnel may have learned in connection with this ongoing investigation. In the affidavit, all dates and times are approximate.

### December 14, 2018 – Recovery of Short Barrel Rifle

22. On December 14, 2018, U.S. Probation Officers with the U.S. Probation Office, conducted a routine residential visit of a probationer at his residence in Apartment C at 315 Walnut Avenue, Carlsbad, California (hereinafter, the "Residence"). During the visit, U.S. Probation Officers identified, in plain view, what appeared to be a rifle located in one of the residence's bedrooms. Two revolvers contained in gun socks were also found in the same bedroom. The probationer denied ownership of the firearms and stated to U.S. Probation Officers that the firearms belonged to his roommate, the **Target Subject**. Due to the probationer's prohibited status, U.S. Probation Officers seized the firearms. U.S. Probation Officers reported they were subsequently contacted by the **Target Subject**, who stated the seized firearms belonged to the **Target Subject**, not the resident on probation, and that **Target Subject** wanted the firearms returned. U.S. Probation Officers notified the ATF San Diego Field Office of the seizure.

### December 17, 2018 – ATF Analysis of Seized Firearms

23. On December 17, 2018, ATF agents met with U.S. Probation Officers at their office and examined the rifle and two revolvers. The rifle appeared to be an AR-15-type

8

SBR manufactured from an unfinished lower receiver bearing on manufacturer markings or serial numbers. A subsequent measuring of the rifle's barrel by ATF agent determined the rifle's barrel to be approximately twelve (12) inches in length.

24. ATF agents queried the **Target Subject** in the NFRTR and determined that the **Target Subject** has no NFA firearm registered to him. The possession of an unregistered SBR is in violation of Title 26 § 5861(d) of the NFA. Furthermore, all NFA firearms are required to have a serial number, in compliance with the firearm marking laws, registered into the NFRTR. The SBR recovered at the Residence does not have the required serial number.

### December 18, 2018 – Phone Conversation

25. On December 18, 2018, an ATF agent placed a ruse telephone call, posing as a U.S. Probation Officer property custodian, to the **Target Subject**. The **Target Subject** stated he had three firearms (one rifle and two revolvers) taken by U.S. Probation Officers from his bedroom that he wanted returned. The **Target Subject** stated there was no serial number on the rifle because it was an "eighty percent." The **Target Subject** stated he bought the rifle's lower receiver from an online shop named Palmetto. The **Target Subject** stated he could provide a receipt from Palmetto to prove the **Target Subject's** ownership of the lower receiver in order for the rifle to be returned to the **Target Subject**.

### January 29, 2019 – Search and Arrest Warrant

26. On January 29, 2019, ATF agents executed a search and arrest warrant on the **Target Subject** and the Residence. Items seized included one (1) Glock 9mm magazine and seven (7) rounds of Winchester 9mm Luger ammunition, one (1) LG G Pad 7.0 electronic tablet device, and one (1) Motorola cell phone. Agents were not aware of and did not search the Residence's garage (Garage #2).

### May 13, 2019 – Electronic Evidence Review

27. On May 13, 2019, an ATF agent conducted a review of electronic evidence extracted from the **Target Subject**'s cellular telephone and digital tablet device seized from the Residence (the seized devices are different from the **Target Telephone**). On the **Target Subject**'s cellular telephone, an ATF agent found photographs of additional firearms believed to be in the **Target Subject**'s possession, which were not recovered during the initial seizure of firearms by U.S. Probation Officers on December 14, 2018, or by ATF agents during the search warrant on January 29, 2019. These pictures included rifles, but it was impossible to determine whether they were NFA firearms.

### May 13, 2019 – Pre-Trial Release Order Conditions

28. On May 13, 2019, a review of the **Target Subject's** standard conditions for his pre-trial release order revealed that the **Target Subject** is prohibited from possessing or attempting to possess a firearm, destructive device, ammunition, or other dangerous weapon during his pre-trial release. A transcript of that detention hearing confirms that the **Target Subject** was specifically informed of these conditions.

### May 14, 2019 – Information from R.M.

29. On May 14, 2019, an ATF agent spoke with R.M., a probationer and former acquaintance of the **Target Subject**, who stated that prior to **Target Subject's** arrest, **Target Subject** stated, "I have a lot of guns. I actually make them sometimes. But don't worry; I keep everything in the garage." R.M. further stated that upon the **Target Subject's** pre-trial release from jail, the **Target Subject** stated, "I'm sure glad they [ATF] didn't go in the garage."[5]

---

[5] R.M. is not a confidential source for law enforcement, his/her reliability is unknown, and they were not compensated for his/her information. R.M. is someone who is not permitted to possess firearms and R.M. lived at, but has since moved from, the apartment complex, but it is at least possible R.M. made the statement to law enforcement to distance his/her self from the firearms that likely were stored in the Residence. R.M. told law enforcement he/she did not know the exact garage associated the **Target Subject**.

10

### May 16, 2019 – Garage Search Warrant

30. On May 16, 2019, at approximately 1100 hours, ATF agents executed search warrant (19MJ2032) for the **Target Subject's** garage, located at 315 Walnut Avenue, Garage #2, Carlsbad, California 92008, which investigation identified as the Residence's garage. The **Target Subject** had previously informed a Pretrial Officer that he did not lease a garage, but information from the **Target Subject's** lease management company indicated that this statement was false and that he leased Garage #2. During a search of **Target Subject's** garage and vehicle, approximately 169 rounds of assorted, various caliber ammunition, two (2) high-capacity rifle magazines, and one unknown manufacturer, unknown model, unknown caliber pistol were recovered.

31. Pretrial Services was informed of the findings. They filed a violation against the **Target Subject** that was approved by the Court, which issued an arrest warrant. Pretrial Services later arrested the Target Subject. Pretrial Services confirmed that during his arrest, the **Target Subject** had a new cellular phone on his person or associated with him.

### May 29, 2019 – Confirmation of Second Cellular Telephone

32. On May 29, 2019, an ATF agent confirmed over the telephone that the **Target Subject** entered a cellular phone, the **Target Telephone** into his personal property (Marshals Register # 73744298) at the GEO Group Western Region Detention Facility. In telephone conversations with the GEO Group Western Region Detention Facility staff, an ATF agent requested to seize the **Target Subject**'s cellular telephone from his personal property. The GEO Group Western Region Detention Facility staff refused to provide the cellular telephone to the ATF agent without a court order. GEO Group Western Region Detention Facility staff later confirmed the **Target Telephone** is a Motorola Moto cellular telephone.

## Criminal History

33. ATF agents received certified conviction documents showing that the **Target Subject** has been convicted of a misdemeanor battery conviction for a violation of California Penal Code (PC) § 242 on September 28, 2015. Per California PC12021(c)(1), anyone convicted of PC 242 is prohibited from owning or possessing a firearm for ten (10) years of the conviction. The conviction documents also state that he is prohibited from having a firearm.

## Target Telephone - Identification

34. On May 29, 2019, staff from the GEO Group Western Region Detention Facility confirmed that the **Target Subject** placed a cellular telephone into personal property at the time of his arrest and that the cellular telephone was currently still being held at the GEO Group Western Region Detention Facility. The GEO Group Western Region Detention Facility refused to provide the **Target Subject**'s cellular telephone to law enforcement without a court order.

## NEED FOR SEARCH WARRANT

35. In this particular case, **Target Subject** possessed a short-barreled rifle in violation of the NFA. Additional investigation indicates that the **Target Subject** continues to possess additional and possibly illegal firearms and ammunition, contrary to the order of this Court. It also appears that the **Target Subject** has taken efforts to conceal and defy the orders of the State of California and this Court. These efforts include lying to a Pretrial Services Officer regarding his control over the Residence's garage, and by continuing to possess firearms and ammunition. Based on the facts of this case, there is probable cause to believe that the **Target Telephone** contains evidence related to the **Target Subject's** violation of the **Subject Offenses** and efforts to conceal or obstruct collection of the same.

Finally, as stated above, the GEO Group Western Region Detention Facility has stated that they will not release the **Target Telephone** without a court order.

36. Based upon the facts of this case, my training, and experience, as well as consultation with other ATF agents, I know individuals buying and selling firearms frequently correspond by email, text message, and social media with their associates, suppliers, and customers. This includes sending photographs of the firearms and negotiating the prices.

37. Firearms are maintained as items of value and are usually kept at a person's residence, or in places that are otherwise readily accessible to the person, such as the person's car. In addition, most people do not immediately dispose of their firearms and usually maintain them for long periods of time, in a secure location within their residence. Many people, especially persons legally prohibited from owning firearms, also keep mementos of their use of firearms including photographs or videotapes of themselves possessing or using firearms. Such items may be maintained on the individual's cellular telephone, smart phone, computer, portable hard drive, or flash drive.

38. Individuals involved in illegal possession of firearms and/or illegal manufacture of firearms also maintain records in both hard copy and electronic format including firearms money ledgers, firearms distribution or customer lists, price lists, firearms supplier lists, correspondence, notation logs, receipts, journals, books, pay and owe sheets, telephone records, telephone bills, address books, bank statements, storage unit receipts, wire transfer receipts, and other documents or devises reflecting the price, quantity, dates, and/or times when firearms were purchased possessed, transferred, distributed or sold and the proceeds obtained from such sales. These traffickers often maintain these records in their homes and digital devices.

39. For these reasons and those stated above, I believe evidence showing that **Target Subject** is violating the **Subject Offenses** will be located in the **Target Telephone**.

40. Based upon my experience and training, consultation with other law enforcement officers experienced in firearms investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the illegal firearms possession activities of the **Target Subject** and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like Facebook, pictures and other digital information are stored in the memory of the cellular telephone described herein.

## SEARCH METHODOLOGY

41. It is not possible to determine, merely by knowing cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to

such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

42. Following the issuance of this warrant, I will collect the **Target Telephone** from GEO Group Western Region Detention Facility and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

43. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

44. Based on all of the facts and circumstances described above, there is probable cause to conclude that the **Target Subject** used the **Target Telephone** to facilitate or conceal evidence of the **Subject Offenses**. The **Target Telephone** was likely used to facilitate the offense by transmitting and storing data, which constitutes fruits, instrumentalities, and evidence of the **Subject Offenses**.

45. Because the **Target Telephone** was seized from the **Target Subject** during his arrest and subsequent booking and has been stored in a secure location, there is probable cause to believe that evidence of illegal activity committed by the **Target Subject** continues to exist on the **Target Telephone**.

46. Based upon my experience and training, consultation with other agents in firearms investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B are likely to be

found in the property to be searched described in Attachment A. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

_____
Lennea Gordon, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me this __6__ day of June, 2019.

_____
The Honorable William V. Gallo
United States Magistrate Judge

16

## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEIZED AND SEARCHED

The properties sought to be seized and searched is a cellular telephone:

a. One Motorola Moto Cellular Telephone, seized from David Alec WHITE on May 23, 2019, and currently held in his personal property at GEO Group Western Region Detention Facility.

The cellular telephone is currently in the possession of the GEO Group Western Region Detention Facility, located at 220 W. C Street, San Diego, California 92101.

## **ATTACHMENT B**

## **DESCRIPTION OF EVIDENCE TO BE SEARCHED FOR AND SEIZED**

The following constitute evidence, and instrumentalities of violations of federal criminal law, namely, Possession of an Unregistered Firearm under the National Firearms Act ("NFA"), Title 26 U.S.C. § 5861, and Title 18, U.S.C., § 922(a)(1)(A); manufacturing/dealing in firearms without a license (the Subject Offenses), between January 30, 2019, and May 23, 2019, as described below:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:
    a. tending to indicate efforts to manufacture/obtain/possess firearms and/or ammunition;
    b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to manufacture/obtain/possess firearms and ammunition;
    c. tending to identify co-conspirators, criminal associates, or others involved in manufacturing/obtaining/possessing firearms and/or ammunition;
    d. tending to identify travel to or presence at locations involved in the manufacturing/obtaining/possessing firearms and/or ammunition;
    e. tending to identify the user of, or persons with control over or access to, the subject phone; or
    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.